IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED CALL NUMBER (978) 869-3366, THAT IS STORED AT PREMISES CONTROLLED BY COMCAST COMMUNICATIONS LLC D/B/A XFINITY MOBILE | Case No. 24-mj-148-01-AJ<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Ronald Morin, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (978) 869-3366 ("the SUBJECT PHONE"), that is stored at premises controlled by Comcast Communications LLC d/b/a Xfinity Mobile ("Comcast"), a wireless telephone service provider headquartered in Mount Laurel, New Jersey.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require Comcast to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI) and have been since May 2006.  I am currently assigned to the Manchester, New Hampshire field office.  As part of my regular duties as an agent, I investigate criminal violations relating to a broad range of

immigration and customs related statutes, including those relating to child exploitation, child pornography, and human trafficking. I have received training in the area of child pornography and child exploitation, and as part of my duties have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. §2256) in various forms of media, including digital/computer media. I have conducted investigations and executed search warrants involving child exploitation and child pornography offenses.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of 18 U.S.C. § 2423(a) (transportation with intent to engage in criminal sexual activity) has been committed by Jesus Moore. There is also probable cause to search the information described in Attachment A for evidence or instrumentalities of this crime as further described in Attachment B.

## PROBABLE CAUSE

5. On October 17, 2023, Person 1 called SafeSport, an "independent nonprofit committed to building a sport community where participants can work and learn together free of emotional, physical and sexual abuse and misconduct,"[1] to report an incident of suspected misconduct. Person 1 reported that Victim 1, who was 16 at the time, was a basketball manager and randomly quit sometime between 2020-2022. Person 1 reported hearing that one of the

---

[1] Preventing and Addressing Abuse | U.S. Center for SafeSport (uscenterforsafesport.org)

coaches was taking advantage of the managers on the team. Person 1 spoke to Victim 1 who confirmed that a coach had taken advantage Victim 1. Person 1 identified the coach as Jesus Moore, the head basketball coach and physical education teacher at North High School in Lawrence, Massachusetts. Person 1 further reported that Moore got Victim 1 drunk and raped Victim 1.

6. On February 13, 2024, law enforcement officers interviewed Victim 1. Victim 1 said that they were the basketball team manager while in high school between 2021 and 2022. Victim 1 explained that their role was to ensure that the team had water and to help with keeping the score book. Victim 1 said that the role required them to be at all practices and games, and that Victim 1 would ride the bus with the team for away games. Victim 1 reported that Moore began to text Victim 1 and would ask Victim 1 to hang out.

7. Victim 1 eventually agreed to hang out with Moore and, on March 7, 2022, Moore told Victim 1 that Moore arranged a ride for them by Uber and said Victim 1 would receive a link on Victim 1's cellphone when it was arriving. At the time, Victim 1 was in Massachusetts. Victim 1 got into the Uber and said that it took her to a hotel that she believed was in New Hampshire. Victim 1 said Moore told them to walk past the front desk and turn left, and that Moore would meet Victim 1 at the end of the hallway by the stairs. From there, Moore led Victim 1 into a hotel room and gave Victim 1 Patron to drink. I know Patron to be a brand of tequila. Victim 1 described feeling as though "everything felt numb" and having blurred vision.

8. Victim 1 reported that Moore took of Victim 1's clothes, and all of Moore's clothes except for a "muscle shirt." Victim 1 reported that Moore put his penis in their mouth and penetrated Victim 1's vagina. Victim 1 later asked Moore where he ejaculated and Moore replied, "You don't remember? You cleaned it up." Victim 1 reported that Moore dressed

Victim 1 and sent Victim 1 home to Massachusetts in an Uber with the Patron bottle and a new pair of Apple Airpods.

9. Victim 1 showed the officers a photograph on her phone that depicted a Patron bottle and the top of a box that is consistent with a box that Apple Airpods come in. The image was dated March 7, 2022, at 8:05 pm. Victim 1 identified Moore's number as (978) 869-3366 (the "SUBJECT PHONE").

10. Victim 1 reported that sometime in August of 2023, Victim 1 saw Moore in public and was "triggered" by seeing him. Victim 1 stated that Victim 1 sent a text message to Moore asking Moore for money to help Victim 1 with school costs. Victim 1 stated that Victim 1 "threatened" Moore by acknowledging to Moore that Moore would face significant consequences if Victim 1 reported Moore. Victim 1 reported that Victim 1 received a response from an email address that came through as an iMessage. The email address showed the sender as elevatedthoughts01@icloud.com. The message reads: "If you need help with something just ask. No need for all the extra. Let me know how I can help or what you need. Give me some time and then we will meet. Hope everything is good with you." Victim 1 reported that an envelope with her name on it was placed in her mailbox. The envelope contained approximately $500 in cash.

11. An officer with the Lawrence Police Department learned that school records indicate that Moore was absent from work, marked as sick, on March 7, 2022.

12. That same officer learned that school attendance records indicate that Victim 1 arrived late for school on March 7, 2022. Those records do not reflect an early dismissal. I understand from that officer that only authorized early dismissals appear on those records; leaving school early without permission would not be documented on school records.

13. On December 12, 2023, two officers interviewed Moore at the Lawrence Police Department. Officers reviewed Moore's *Miranda* rights with Moore, Moore acknowledged that he understood those rights and agreed to talk to the officers. Initially, Moore said that he did not recall ever ordering an Uber for Victim 1 to take her to a hotel in New Hampshire. He then said he "could possibly" have ordered Victim 1 an Uber to New Hampshire. Moore said he felt like he should have a lawyer present before he answered more questions and officers ended the interview.

14. Records from the Super 8 Motel in Manchester, New Hampshire, show that an individual named Jesus Moore rented a room for a one-night stay on March 7, 2022. The records identify a Cadillac Escalade, with registration F-O-E, as associated with the reservation.

15. According to New Hampshire vehicle registration information, Jesus Moore, with an address in Salem New Hampshire, has a Cadillac Escalade bearing New Hampshire registration F-O-E registered to him.

16. An officer with the Manchester Police Department obtained a warrant for Uber records relating to any accounts belonging to Moore. Those records identify an account with a display name of Jesus Moore, the number associated with the SUBJECT PHONE, an email address of jesusmoore4@gmail.com (the Subject Account), and device information as an iPhone 15.2 with an operating system of ios 17.1.2.

17. According to records received from Google, the subscriber of the Subject Account is Jesus Moore and the phone number associated with the account is the number associated with the SUBJECT PHONE.

18.     According to records received from Verizon, the subscriber of the SUBJECT PHONE is Jesus Moore, and Jesus Moore has been the subscriber of the SUBJECT PHONE since at least September 1, 2021.

19.     On My 16, 2024, I obtained a search warrant, 24-mj-108, for Verizon records. Those records indicate that request for location information should be directed to Comcast.

20.     In my training and experience, I have learned that Comcast is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

21.     Based on my training and experience, I know that Comcast can collect cell-site data about the SUBJECT PHONE. I also know that wireless providers such as Comcast typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

22.     Based on my training and experience, I know that Comcast also collects per-call measurement data, which Comcast also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

23.     Based on my training and experience, I know that wireless providers such as Comcast typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as Comcast typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

24.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

25.     I further request that the Court direct Comcast to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Comcast, who will then compile the requested

records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

                                       Respectfully submitted,

                                       /s/ Ronald Morin
                                       Ronald Morin
                                       Special Agent
                                       HSI

Sworn to me by telephone in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure on this \_\_\_\_26th\_\_\_\_ day of June, 2024.

                                       HONORABLE ANDREA K. JOHNSTONE
                                       UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (978) 869-3366, ("the Account"), that are stored at premises controlled by Comcast Communications LLC d/b/a Xfinity Mobile ("the Provider"), headquartered in Mount Laurel, New Jersey.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period February 15, 2022 to March 15, 2022:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

> viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

b. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

> i. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and
>
> ii. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as the "real-time tool" or "RTT" data).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes [evidence, fruits, contraband, and instrumentalities] of violations of 18 U.S.C. § 2423(a) (transportation with intent to engage in criminal sexual activity) involving Jesus Moore during the period of February 15, 2022 to march 15, 2022.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Comcast Communications LLC d/b/a Xfinity Mobile ("Comcast"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Comcast. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Comcast, and they were made by Comcast as a regular practice; and

b. such records were generated by Comcast's electronic process or system that produces an accurate result, to wit:

    1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Comcast in a manner to ensure that they are true duplicates of the original records; and

    2. the process or system is regularly verified by Comcast, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                              Signature